UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| T.S., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br><br> Defendant. | Case No. 19-cv-03658-VKD <br><br> **ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 20, 25 |

Plaintiff T.S.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, *et seq*. T.S. claims that the administrative law judge ("ALJ") improperly discounted her testimony, did not properly evaluate certain medical opinions, and failed to consider whether she was disabled for a closed period.

The parties have filed cross-motions for summary judgment. The matter was submitted without oral argument. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants in part and denies in part T.S.'s motion for summary judgment, grants in part and denies in part the Commissioner's cross-motion for summary judgment, and remands this matter for further administrative proceedings

---

[1] Because opinions by the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

consistent with this opinion.[2]

## I. BACKGROUND

At the time the ALJ issued the May 2018 decision at issue, T.S. was 55 years old. She has a high school education and has worked as a home care attendant, veterinary technician and a systems analyst. *See* AR[3] 43-45, 84, 251-252.

T.S. protectively filed her DIB application on May 17, 2012, alleging that she has been disabled since August 27, 2009 due to a right shoulder rotator cuff injury and a left shoulder injury. AR 212-218, 251. Her application was denied initially and on review. An ALJ held a hearing in December 2013 and subsequently issued an unfavorable decision on January 28, 2014. AR 17-32. The Appeals Council denied T.S.'s request for review in June 2015, and in August of that year T.S. sought judicial review of the decision denying benefits. AR 3-5, 1140-1142.

In April 2016, the District Court approved the parties' stipulation to remand the matter for further administrative proceedings. AR 1153-1155. Specifically, the parties stipulated that on remand the ALJ should "further evaluate the medical opinion evidence, including the opinion of Dr. Ramin Shiva, and explain the weight given to the opinion evidence," and "shall also reassess [T.S.]'s residual functional capacity ["RFC"] and issue a new administrative decision." AR 1154; *see also* AR 1163. Additionally, in view of a subsequent claim for Title II disability benefits T.S. filed in October 2015, the Appeals Council directed the ALJ to consolidate the two claims files, associate the evidence, and issue a new decision on the consolidated claims. AR 1163.

Following remand, the ALJ held an administrative hearing on April 10, 2018 and subsequently issued an unfavorable decision on May 23, 2018. AR 1054-1067. The ALJ found that T.S. meets the insured status requirements of the Act through March 31, 2014 and that she has not engaged in substantial gainful activity since the alleged onset date of August 27, 2009 through her last date insured. AR 1059. He further found that T.S. has the following severe impairments: morbid obesity and status post right rotator cuff tear repair. However, he concluded that T.S. does

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 9, 12.

[3] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 17.

not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations. AR 1059-1060. Additionally, the ALJ found that T.S. does not have a medically determinable impairment with respect to her near-vision acuity, left shoulder, or left hip. He further found insufficient evidence of a severe right hip impairment for any 12-month period through the March 31, 2014 last date insured. AR 1060.

The ALJ determined that T.S. has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [T.S.] could lift and carry 5 pounds frequently and 10 pounds occasionally and sit, stand and walk without restriction. She could not reach overhead with the right upper extremity but could occasionally reach in all other directions. She could occasionally kneel or stoop but could not crawl or climb ladders, ropes or scaffolds.

AR 1060. The ALJ found that through the March 31, 2014 last date insured, T.S. was capable of performing past relevant work as a systems analyst and that such work did not require the performance of work-related activities preluded by T.S.'s RFC. AR 1066. Accordingly, the ALJ concluded that T.S. was not disabled, as defined by the Act, from the alleged onset date of August 27, 2009 through March 31, 2014. AR 1067.

The Appeals Council denied T.S.'s request for review of the ALJ's decision. AR 1045-1047. T.S. then filed the present action seeking judicial review of the decision denying her application for benefits.

## II.     LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance" and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ahearn*, 988 F.3d at 1115

1  (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)); *see also Morgan*, 169 F.3d at 599
2  (same).  When determining whether substantial evidence exists to support the Commissioner's
3  decision, the Court examines the administrative record as a whole, considering adverse as well as
4  supporting evidence.  *Ahearn*, 988 F.3d at 1115; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.
5  1989).  Where evidence exists to support more than one rational interpretation, the Court must
6  defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16; *Morgan*, 169 F.3d at
7  599.

### III. DISCUSSION

#### A. T.S.'s Testimony

At the December 2013 hearing, T.S. testified that she cannot work full-time due to "too much pain," specifically referring to her upper right body, back and arm and noting "arthritis also in [her] right hip."  AR 48, 54.  She stated that there was no improvement following two surgeries on her right shoulder and months of physical therapy.  AR 49.  She noted that her pain medication makes her sleep; and that when she wakens, her pain level is "medium" and that she "can live with it," but that "[a]ny kind of activity," such as "[w]ashing dishes," "[t]rying to sweep a floor," "[h]olding a cup," and "[h]olding a glass," makes the pain worse.  AR 50.  She also stated that her pain medication makes it more difficult for her to concentrate and focus and that she can concentrate on an activity for about 20 minutes before needing to rest for about 15 minutes.  AR 66-67.  T.S. further testified about limitations in personal hygiene, such as difficulties getting dressed, and brushing and washing her hair, noting that she had assistive grab bars and a chair installed in her shower.  AR 52.  T.S. stated that she can sit for 45 minutes before needing to stand up and walk around for about 15 minutes due to painful muscle spasms in her right shoulder; that she can sit for two hours total in an eight-hour period; can stand/walk for two hours total in an eight-hour period; and can lift up to 10 pounds, can lift and pull out a 10-pound item from a shelf at the store with her left arm, but not with her right, but can only hold a 10-pound item for a few seconds before dropping it.  AR 54-57.

While the ALJ found that T.S.'s medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, he concluded that T.S.'s statements concerning

the intensity, persistence and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 1061-1062. T.S. contends that the ALJ improperly discounted her statements based solely on a lack of objective medical evidence.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)). In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" *Id.* (*quoting Smolen*, 80 F.3d at 1283-84); *see also Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) ("We therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing reasons.").

An ALJ may consider several factors, including (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at 1039. Additionally, an ALJ may also consider the observations of treating and examining physicians and other third parties concerning the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Smolen*, 80 F.3d at 1284. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti*, 533 F.3d at 1039 (*quoting Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)).

Here, the ALJ made no finding of malingering and therefore was required to provide

specific, clear and convincing reasons for partially discounting T.S.'s statements regarding her symptoms. *Tommasetti*, 533 F.3d at 1039. After stating that he partially discounted T.S.'s statements concerning the intensity, persistence and limiting effects of her symptoms, the ALJ provided a summary of the medical evidence and his evaluation of the medical opinions, but did not expressly say what specific evidence he found inconsistent with T.S.'s testimony regarding how her pain affects her ability to function. AR 1061-1066. The Commissioner attempts to extract from the ALJ's decision several grounds on which he says the ALJ relied, in addition to the objective medical evidence, to discount T.S.'s testimony. While the Court may draw inferences from the ALJ's decision, the Court properly may do so only "if those inferences are there to be drawn." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). For the reasons discussed below, the Court concludes that the ALJ provided specific, clear and convincing reasons to partially discount T.S.'s testimony with respect to her alleged limitations in sitting, standing and walking, but that the ALJ failed to provide sufficient justification with respect to T.S.'s claimed limitations in her ability to lift and carry.

With respect to T.S.'s alleged difficulties sitting, standing and walking, the Commissioner argues that the ALJ properly discounted T.S.'s pain allegations based on (1) the testimony of testifying medical expert Dr. Malcom Brahms, who noted conservative treatment records with respect to T.S.'s back; and (2) rejection of the opinion of chiropractor Dr. Ramin Shiva, who examined T.S. and indicated that she could sit, stand and walk less than four hours in an eight-hour workday. AR 62, 901, 1064, 1066. Although it is unclear what record Dr. Brahms was referring to with respect to T.S.'s conservative back treatment, in her reply brief T.S. acknowledges that there is sparse documentation of a back impairment and states that back pain "has not been a main component of her disability." Dkt. No. 26 at 6. As for Dr. Shiva's opinion, the ALJ correctly noted that Dr. Shiva did not identify any related medical impairment or examination findings to support the conclusion that T.S. can sit, stand and walk less than four hours. *See* AR 901, 1066. The ALJ further found Dr. Shiva's conclusions about T.S.'s ability to stand, sit and walk to be at odds with the opinions of treating physicians Drs. Michael Sacco and Jaspal Sidhu, examining evaluator Dr. Christopher Chen, and Dr. Brahms, who did not identify

6

any limitations for these activities. AR 1066 (citing AR 354-396, 455, 506, 696, 740, 910). T.S. does not challenge the ALJ's weighting of Dr. Shiva's opinion, but contends that because Dr. Shiva is a chiropractor, the ALJ's assessment of that opinion is subject to a relatively low bar requiring the ALJ to merely articulate "germane" reasons for rejecting it, *see Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). However, T.S. does not explain why that necessarily means that the ALJ's assessment of Dr. Shiva's opinion is not a valid reason for discounting her pain allegations.

The Commissioner further notes that T.S. reported no difficulties sitting, standing or walking to Dr. Chen in October 2011 and 2012. AR 693, 907. This is not a reason expressly stated by the ALJ in his decision. Even if it was, T.S. argues that it is not a sufficient basis to discount her testimony, asserting that her difficulties with ambulation stem from her hip problem, which she argues is a progressive condition that "had not reached a prominent level" at the time of the noted examinations with Dr. Chen. Dkt. No. 26 at 7. Here, T.S. points out that while February 2014 hip x-rays were normal (AR 1596), on March 5, 2014 she was diagnosed with bursitis of the right hip and received a steroid injection (AR 1467, 1470), which she says is a non-conservative measure, *see Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014). However, the ALJ considered those records and correctly notes that there were no further right hip complaints until 2016, well after T.S.'s last date insured. AR 1064. Viewing the record as a whole, the Court finds that the ALJ gave specific, clear and convincing reasons for partially discrediting T.S.'s pain testimony with respect to her ability to sit, stand and walk.

The Court reaches a different conclusion with respect to T.S.'s pain testimony and her ability to lift and carry. The Commissioner contends that the ALJ properly discounted T.S.'s testimony for several reasons: (1) T.S. testified that she is ambidextrous; (2) nerve conduction studies and other medical tests revealed no radiculopathy, plexopathy, myopathy, or peripheral neuropathy or any impairments that would preclude bilateral fingering; (3) during a November 12, 2009 evaluation, Dr. Sacco noted that T.S.'s reports of tenderness were "somewhat out of

7

proportion to what is expected" and questioned the effort she put forth on tests;[4] and (4) during an October 2011 examination, Dr. Chen noted that T.S. "is doing minimal home exercises" and "needs to be in a more aggressive program."  AR 450-463, 504, 695, 1062-1063, 1093.  As noted above, the ALJ did not clearly state what specific evidence he found to be inconsistent with T.S.'s testimony.  But even accepting that the ALJ discounted T.S.'s testimony for the reasons proffered by the Commissioner, none of those reasons is clear and convincing.

First, it is not apparent from the ALJ's decision that he relied on T.S.'s testimony that she is ambidextrous (AR 1093) as a basis to discredit her pain allegations.  The ALJ cited that particular testimony in his summary of T.S.'s allegations, and not in the subsequent portion of his decision where he discusses the evidence.  AR 1061.  Moreover, T.S. testified to the use of both her right and left hands/arms at both administrative hearings, and the ALJ specifically noted that T.S.'s testimony that she is ambidextrous is consistent with information she provided to a consultative examiner.  AR 51-52, 1061.  Second, T.S. notes that she does not claim any impairments relating to carpel tunnel syndrome or De Quervain's disease or that she is disabled based on any neurological condition.  Thus, normal nerve conduction studies and other test results pertaining to such conditions appear to have no bearing on T.S.'s shoulder issue, which she says is the primary basis of her claimed disability.  Third, although Dr. Sacco did question T.S.'s reports of tenderness and the effort she put forth on tests, he nonetheless noted that T.S. "does seem to have significant pain and weakness" and that she was a candidate for rotator cuff surgery.  AR 503-504.  Finally, while Dr. Chen opined in October 2011 that T.S.'s exercise program needed to be "more aggressive" (AR 695), there is no evidence that T.S. was not complying with her home exercise program.  Nor is it clear how or why Dr. Chen's comment about T.S.'s exercise program is inconsistent or at odds with her pain testimony.  Because the Court cannot determine how the ALJ evaluated the evidence with respect to this aspect of T.S.'s pain testimony, the Court will remand for further proceedings on this issue.

---

[4] Although the Commissioner asserts that Dr. Sacco reportedly commented about T.S.'s need to increase physical therapy (Dkt. No. 25 at 9), the Court does not consider those alleged comments here.  The ALJ does not appear to have cited to any such observation as a basis to discount T.S.'s statements.

### B. Medical Opinions[5]

T.S. argues that the ALJ failed to articulate specific and legitimate reasons for giving "little weight" to the opinions of treating physicians, Dr. Sidhu, M.D. and Dr. Sacco, M.D. "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* A treating physician's opinion is entitled to "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). "However, '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas*, 278 F.3d at 957).

"When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citing § 404.1527(c)(2)-(6)). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Id.* (internal quotations and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (internal quotations and citation omitted).

---

[5] The Commissioner's rules and regulations regarding the evaluation of medical evidence were revised in March 2017and apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c ("For claims filed . . . on or after March 27, 2017, the rules in this section apply. For claims filed before March 27, 2017, the rules in § 404.1527 apply."). Because T.S.'s claims were filed before March 27, 2017, the Court applies the rules then in effect under 20 C.F.R. § 404.1527.

Dr. Sidhu examined T.S. a number of times in the months following her July 2009 rotator cuff injury and opined on August 19, 2009 that she was restricted to minimal lifting with her right arm. AR 401. In September 2009, he opined that T.S. should not lift with her right arm; and he later stated in October and November 2009 that T.S. should not lift, push, or pull with her right arm. AR 355, 359, 363, 369, 371, 387, 447.

At Dr. Sidhu's request for an orthopedic consultation, Dr. Sacco examined T.S. on November 12, 2009. Noting that T.S. was "a young individual" and that "her pain presentation with significant tenderness is somewhat out of proportion to what is expected," Dr. Sacco nonetheless observed that physical therapy and a steroid injection were unsuccessful and recommended surgery to repair T.S.'s rotator cuff. AR 504. Following a further examination on February 28, 2011, Dr. Sacco opined that T.S. "should not perform any lifting, repetition, or work at or above shoulder level on the right." AR 506. T.S. underwent the first of two surgeries, performed by Dr. Sacco, on her right rotator cuff on April 6, 2011. AR 515-517. In various subsequent reports, Dr. Sacco noted that T.S. should remain off work through at least January 2012. AR 536, 549, 589, 591, 775, 776, 813, 816. Dr. Sacco performed a second rotator cuff surgery on April 25, 2012. AR 756-758. At an October 12, 2012 examination, T.S. reported to Dr. Sacco that she could lift 10 pounds. AR 922. In a subsequent examination on November 12, 2012, chiropractor Dr. Ramin Shiva noted that T.S. was able to carry 20 pounds for 100 feet. AR 899. In August 2013, Dr. Sacco noted that T.S. is limited to driving 20 to 30 minutes at a time due to shoulder pain and muscle spasm in her upper back. AR 1028.

The ALJ gave "little weight" to the opinions of Drs. Sidhu and Sacco as being "at odds" and "inconsistent with [T.S.]'s testimony that she was able to lift 10 pounds and with her demonstrated ability to carry 20 pounds for 100 feet at [Dr. Shiva's] November 2012 evaluation." AR 1065. T.S. does not deny that as of October 2012 she reported the ability to lift 10 pounds with her right arm. Dkt. No. 26 at 11; AR 922. Nevertheless, she argues that there can be no inconsistency between her 2012 report of her ability to lift 10 pounds and the opinions of Drs. Sidhu and Sacco, because the doctors' opinions were rendered earlier in time, prior to her rotator cuff surgeries and recovery period. In other words, T.S. contends that these doctors' respective

opinions were accurate as of the time they were made. However, insofar as the ALJ assessed these opinions with respect to T.S.'s claims of current or ongoing disability, his decision to give their opinions less weight in view of her own more recent reports of her abilities is at least rational. *See Ahearn*, 988 F.3d at 1115-16 ("When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision.") (citation omitted). The Court finds no error here.

### C.     Closed Period of Disability

T.S. contends that the ALJ erred by failing to give any consideration to whether she was disabled for a closed period from August 27, 2009, the alleged onset of disability, through October 12, 2012 when she reported to Dr. Sacco that she could lift 10 pounds (AR 922). *See Attmore v. Colvin*, 827 F.3d 872, 874 (9th Cir. 2016) (defining a "closed period" case as one "where the ALJ finds in a single decision that the claimant was disabled for a closed period of time but has since medically improved").

T.S. bases her arguments not only on the ALJ's alleged failure to properly evaluate her testimony and the opinions of Drs. Sidhu and Sacco, but also on significant absenteeism. Here, T.S. notes, and the Commissioner does not refute, that at the first administrative hearing the vocational expert ("VE") testified that an individual who would miss three days of work per month could not perform T.S.'s past relevant work. *See* AR 74. T.S. does not provide a calculation as to how many days of work per month she would have missed in the period between August 27, 2009 and October 12, 2012. She nonetheless contends that based on her participation in physical therapy in September and October 2009 (*see* AR 451), her two surgeries in April 2011 and April 2012 (AR 515-517, 756-758) with attendant convalescence periods, and 34 physical therapy visits between May 18, 2011 and September 29, 2011 (AR 707-708), there is "an implication" that she would miss three days per month, on average, during the proposed three-year closed period of disability. Dkt. No. 20 at 13. T.S. states that although she raised the issue of a possible closed period of disability at the second administrative hearing (AR 1103-1106), the ALJ did not address the issue. The Commissioner also does not address the issue in his briefing before this Court.

Because the Court is remanding this case for error in the assessment of T.S.'s testimony, and there being no findings by the ALJ regarding T.S.'s assertions regarding absenteeism, the Court finds remand appropriate for the ALJ to assess whether T.S. is entitled to a closed period of disability. In conducting this analysis, the ALJ should consider changes (if any) made on remand with respect to his evaluation of T.S.'s pain testimony. Additionally, the ALJ should determine if T.S. was disabled for the closed period in question due to excessive absenteeism, giving due consideration to the VE testimony from the first administrative hearing that an individual who would miss three days of work per month could not work.

## IV. DISPOSITION

T.S. asks the Court to remand for payment of benefits under the credit-as-true doctrine. "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Court may remand for an immediate award of benefits only where (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. at 1045. Even when all three conditions are satisfied and the evidence in question is credited as true, it is within the district court's discretion whether to make a direct award of benefits or to remand for further proceedings when the record as a whole creates serious doubt as to disability. *Id*.

The credit-as-true standard is not satisfied here. Further administrative proceedings are necessary regarding the ALJ's adverse findings regarding T.S.'s pain testimony, as well as T.S.'s claim that she was disabled for at least a closed period from August 27, 2009 to October 12, 2012.

## V. CONCLUSION

Based on the foregoing, T.S.'s motion for summary judgment is granted in part and denied in part, the Commissioner's cross-motion for summary judgment is granted in part and denied in part, and this matter is remanded for further proceedings consistent with this order. The Clerk

1  shall enter judgment accordingly and close this file.

2  **IT IS SO ORDERED.**

3  Dated: March 31, 2021

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge